THE PEOPLE OF THE STATE OF ILLINOIS, Respondent-Appellee, *v.*
LESTER E. WILLIS, Petitioner-Appellant.

First District (1st Division)    No. 63152

Opinion filed June 20, 1977.

Dorothea Kaplan, of Chicago, for appellant.

Bernard Carey, State's Attorney, of Chicago (Laurence J. Bolon, James S. Veldman, and Louis R. Schroeder, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE O'CONNOR delivered the opinion of the court:

Lester E. Willis appeals from the order of the circuit court of Cook County dismissing his petition for post-conviction relief without an evidentiary hearing. He argues that he was entitled to an evidentiary hearing because the petition, affidavits and transcript of his trial wherein he pleaded guilty made a prima facie showing of his right to relief where (1) the admonitions of the court preceding his plea of guilty were insufficient to establish that he had been informed of the nature of the charges against him and that a factual basis for his plea existed and (2) his guilty plea was induced by misrepresentation of counsel that the sentence he would receive on his plea would run concurrently with another sentence to be imposed for a probation violation.

The facts are not in dispute, although there is a dispute as to the legal consequences of the facts. Petitioner Willis pleaded guilty to charges of auto theft and armed robbery in August 1967, for which he was sentenced to concurrent terms of 5 years probation, with the first 5 months to be served in custody. Eight months later, in April, 1968, petitioner had been charged by indictments with four counts of rape, two counts of attempt rape, two counts of robbery and one count of attempt robbery. He was also charged with contempt of court. Petitioner was represented on these charges by Assistant Public Defender Cornelius Toole, who appeared with petitioner before the court and informed the court that he had conferred with petitioner and specifically advised him of his right to trial and the possible sentences upon conviction for the offenses charged. Mr. Toole informed the court that Willis wanted to withdraw his plea of not guilty and plead guilty to the offenses charged. Mr. Toole then questioned petitioner in open court and Willis acknowledged that his plea was freely and voluntarily made.

The court then questioned Willis, ascertaining that Willis was aware he was waiving his right to a jury trial by his pleas of guilty and that Willis

knew what the possible sentences were on each of the charges. The court accepted the pleas. The prosecutor then sought to establish a factual basis for each plea through stipulation in the following manner:

"Mr. Moran: It is stipulated between Mr. Toole, representing Mr. Willis, that if the witnesses were called on Indictments 68—296 and 68—297, charging the offenses of attempt to commit rape, they would testify to facts set forth in those indictments charging the offense of attempt to commit rape.

So stipulated?

Mr. Toole: So stipulated."

The same form was followed for each offense charged.

Evidence was offered in aggravation and mitigation, with no mention of any agreement between the State and petitioner as to the sentences to be recommended. The court sentenced Willis to imprisonment for from 10 to 14 years for the attempt rape and attempt robbery convictions, and 10 to 15 years for the rape and robbery convictions, and one year for the contempt conviction, all sentences to run concurrently. These sentences were less than those recommended by the State.

On May 22, 1968, Willis appeared before the judge who had sentenced him to probation in 1967 to answer the State's petition for revocation of probation. Willis was represented by a second assistant public defender, Harold Cowan. The State introduced certified copies of the convictions entered in April. The judge revoked the probation and sentenced Willis to imprisonment for from 5 to 15 years for armed robbery and for from 5 to 10 years for theft, these sentences to run concurrently with each other but consecutive to the sentences imposed on petitioner's guilty pleas the month previously. Defense counsel's only recommendation was that the maximum sentence imposed not exceed three times the minimum, which recommendation was followed by the court. The court repeated the sentence upon inquiry by defense counsel and the prosecutor repeated the sentence for a third time, giving the docket numbers of the convictions for clarity. The court then inquired whether petitioner had been advised of his right to appeal, right to a free transcript and appointed counsel and petitioner responded affirmatively. The court nevertheless repeated to petitioner that he had a right to a transcript, a notice of appeal to be filed at his request and appointment of counsel for his appeal, all without cost. Petitioner again responded affirmatively. No one made any mention of an agreement as to sentencing and neither petitioner nor his counsel made any remark or protest about the sentence.

No appeal was taken from the above proceedings.

On November 11, 1972, Willis filed a pro se petition for post-conviction relief. The public defender was appointed to represent him and a supplemental petition, supported by affidavits of petitioner and Cornelius

Toole, was filed on September 14, 1973. The court granted the State's motion to dismiss the petition after argument on October 29, 1973. Petitioner appealed, but during the pendency of the appeal petitioner's attorney became aware, for the first time, that Willis's mother had allegedly been present during a discussion between petitioner and Toole prior to petitioner's pleas. Leave was sought to file her affidavit in this court, which we denied in an order reversing the trial court's dismissal and remanding to allow the lower court to consider the petition in light of the additional affidavit.

The trial court allowed petitioner's motion to file his mother's affidavit. The State again moved to dismiss and, after argument on November 5, 1975, the motion to dismiss was granted.

■■ The thrust of petitioner's first contention is that he was denied due process of law by the court which accepted his guilty pleas because that court failed to determine a factual basis for his pleas and failed to admonish him as to the nature of the charges against him. The trial court properly dismissed this part of the petition, because there is no requirement under either the State or Federal constitutions that a trial court accepting a guilty plea must determine a factual basis or admonish the defendant as to the nature of the charges. (*People v. Brittain* (1974), 19 Ill. App. 3d 616, 312 N.E.2d 39; *People v. Holvey* (1974), 17 Ill. App. 3d 809, 308 N.E.2d 622.) Only "a substantial denial of his rights under the Constitution of the United States or of the State of Illinois" may be properly advanced by petitioner in a post-conviction proceeding. (Criminal Code of 1961, section 122—1 (Ill. Rev. Stat. 1973, ch. 38, par. 122—1); *People v. Newberry* (1973), 55 Ill. 2d 74, 302 N.E.2d 34.) Therefore this claim was properly dismissed for lack of jurisdiction.

■■ Though this issue was properly dismissed in the post-conviction proceeding as a matter of law, we note that the court did, in the record, have before it factual bases for petitioner's pleas and also did, in the record, determine that petitioner understood the nature of the charges against him and the consequences of his plea. On April 16, 1968, the court was required to inform petitioner of the consequences of his plea and the maximum sentences which could be imposed (Ill. Rev. Stat. 1967, ch. 38, par. 115—2) and the court, under the then applicable Supreme Court Rule 401(b), was required to find from the proceedings held in open court that the petitioner understood the nature of the charges against him and the consequences of a finding of guilt. (Ill. Rev. Stat. 1967, ch. 110A, par. 401(b).) The requirements of Rule 401(b) did not include that a factual basis for the plea be determined; nevertheless, the petitioner, through his counsel, stipulated as to each offense charged that, if the witnesses were called to testify, they would testify to the facts alleged in the indictments. This was sufficient to establish a factual basis for each plea. (*People v.*

*Guy* (1972), 7 Ill. App. 3d 935, 288 N.E.2d 712 (abstract).) The court specifically referred to each charge by name while asking petitioner if he understood what the possible sentences were upon conviction of each of the charges. Petitioner indicated that he understood. This was sufficient to inform petitioner of the nature of the charges and determine that petitioner understood the possible sentences. (*People v. Ballay* (1975), 30 Ill. App. 3d 741, 332 N.E.2d 762.) Petitioner does not claim that he pleaded guilty to any of the charges by mistake, which distinguishes this case from *Smith v. O'Grady* (1941), 312 U.S. 329, 85 L. Ed. 859, 61 S. Ct. 572, and *United States v. Davis* (7th Cir. 1954), 212 F.2d 264, which he cites. From the totality of the record, including the statements of petitioner's counsel, petitioner's own response to questions put by his counsel and by the court, and the stipulation of facts on each offense charged, we conclude that petitioner's plea of guilty was understandingly entered and there was no need for an evidentiary hearing on this issue. *People v. Carrion* (1974), 21 Ill. App. 3d 195, 315 N.E.2d 251.

■■ Petitioner's contention that his guilty plea was induced by an unkept promise of a concurrent sentence was properly raised in the post-conviction proceeding, since a coerced plea is subject to collateral attack as an error of constitutional dimension in a post-conviction proceeding. (*People v. Neuhalfen* (1975), 29 Ill. App. 3d 461, 331 N.E.2d 347.) "Since the defendant's post-conviction petition was dismissed without a hearing, we must decide whether the petition and supporting affidavit[s], when read in light of the record of proceedings, make a substantial showing that the defendant was denied due process of law * * *." *People v. Jones* (1977), 66 Ill. 2d 152, 157-58, 361 N.E.2d 1104.

The supplemental petition alleged that "Petitioner was induced to plead guilty by his attorney who represented to him that if he did so, he would receive concurrent sentences on the probation violations and the instant charges." Petitioner stated in his own affidavit that Mr. Toole had told him the following: "The prosecuting attorney has informed me that he is offering that the sentences which may, and probably will without your plea of guilty, be imposed under Indictment Number 68-296—68-304 and your probation violations will be concurrent *only* in the event that you plead guilty to all of them." (Emphasis in original.) Mr. Toole's affidavit, filed by petitioner, stated:

"That some time prior to the plea of guilty in my discussions with Defendant, I advised him that the violation of probation pending before Judge Fitzgerald, would probably result in a sentence to run concurrently with the sentence he received with Judge Heilingoetter.

* * *

That I assured Mr. Willis that he would not have any difficulty in getting concurrent time.

*  *  *

That it was my impression that Mr. Willis would receive concurrent time, and I did in fact relate this to Mr. Willis."

Petitioner's mother's affidavit stated that she was present during a discussion between her son and Toole and that she "was told directly by Cornelius Toole and also heard Cornelius Toole say to Lester Willis, that if he, Lester Willis would plead guilty on all indictments, that he would get less time than if he demanded trial, and that, in fact, if he pleaded guilty he, Lester Willis would be out of prison in Seven (7) years."

If petitioner's affidavit is truthful, then Mr. Toole spoke to the prosecutor and was offered a sentencing agreement in return for petitioner's plea of guilty. But Mr. Toole, allegedly a participant in the plea discussion, makes no mention of it in his affidavit. Neither does the affidavit of petitioner's mother refer to Mr. Toole reporting to petitioner that the prosecutor had promised or said anything. Therefore, petitioner's memory of an offer by the prosecutor, reported to him by Mr. Toole, is wholly uncorroborated. And, as we have noted above, the reports of proceedings of both the change of plea hearing to the 10 charges and the violation of probation hearing reveal no reference by either the petitioner, his attorneys, the prosecutor or the court as to any agreement or understanding between or among any of these parties about sentencing. Significantly, there was no protest, remark or comment made by either petitioner or his attorney about the sentence imposed after probation was revoked, where the fact that the sentence was to run consecutively to the sentences imposed a month earlier was pointed out three times.

We find that the trial court did not err in dismissing the petition without an evidentiary hearing. Petitioner has the burden of demonstrating that his constitutional rights have been violated (*People v. Watson* (1972), 50 Ill. 2d 234, 236, 278 N.E.2d 79, 80) and where the record shows ample opportunity for petitioner or his counsel to object that a plea agreement has not been fulfilled, the petition and affidavits must definitely show that such an agreement existed or the State's motion to dismiss the petition without an evidentiary hearing should be granted. In *People v. Neuhalfen* (1975), 29 Ill. App. 3d 461, 464, 331 N.E.2d 347, 349, the court affirmed a dismissal of petitions without an evidentiary hearing on the claim that petitioners' pleas of guilty were the result of mistreatment while in jail, because the record revealed that the petitioners had been questioned about this treatment in the jail and their answers contradicted the allegations of their petitions. Here, where petitioner submitted affidavits of his attorney and a bystander who had reason to be biased in petitioner's favor, and only petitioner's own affidavit speaks of an agreement with the State, and where the transcript of the probation revocation hearing shows no protest or objection to the consecutive sentence, then "it would seem incredible that any fact-finder would believe defendant if he now

testified in support of his allegations, and his testimony would be of little, if any, value at an evidentiary hearing." *People v. Spicer* (1970), 47 Ill. 2d 114, 119, 264 N.E.2d 181, 184; see *People v. Blewett* (1973), 11 Ill. App. 3d 1051, 1057, 298 N.E.2d 366, 370-71.

■■ Dismissal of a post-conviction petition without an evidentiary hearing was held proper in *People v. Gaines* (1971), 48 Ill. 2d 191, 268 N.E.2d 426, where the opportunity to present petitioner's claim of an unfulfilled promise as to sentencing was available at the hearing in aggravation and mitigation after the plea, no objection was made after the sentence was pronounced, defendant took no appeal directly from his guilty plea proceeding and made no motion to withdraw his plea, and the petition for post-conviction relief was not filed until 62 months after defendant pleaded guilty and was sentenced. The same factors are present in the instant case, except the delay between the sentence and the filing of the original petition was nearly 54 months, a sufficiently long delay to be considered against petitioner's allegations, as was done in *Gaines*.

■■ If, however, petitioner's claim is that he is entitled to relief not because the State or the court promised a concurrent sentence but solely because his attorney predicted his sentence inaccurately, we are presented with a different question which leads to the same results. Examination of Toole's affidavit leads us to conclude that his statements about concurrent sentences were predictions and not promises. Similarly, the conversation between Toole and petitioner reported by petitioner's mother in her affidavit reveals no promise and does not even mention concurrent sentences. Since petitioner was sentenced on his pleas of guilty to a minimum of 10 years, the prediction of his release within 7 years on parole as to that proceeding was accurate. The mother's affidavit makes no mention of the probation revocation proceeding still pending, however.

■■ A guilty plea is involuntary and therefore void if induced by an unfulfilled promise of leniency. (*People v. Sigafus* (1968), 39 Ill. 2d 68, 233 N.E.2d 386.) However, a guilty plea made in reliance upon advice of counsel estimating a sentence to be expected is a voluntary plea. (*People v. Collins* (1975), 31 Ill. App. 3d 146, 333 N.E.2d 632.) The use of the words "probably" and "impression" by Toole in his affidavit connote a prediction rather than a promise and such a prediction, when unfulfilled, does not give petitioner a right to post-conviction relief. (*People v. Carmichael* (1974), 17 Ill. App. 3d 249, 307 N.E.2d 770.) Therefore, the petition was properly dismissed without an evidentiary hearing as a matter of law.

The recent opinion of the United States Supreme Court in *Blackledge v. Allison* (1977), ___ U.S. ___, 52 L. Ed. 2d 136, 97 S. Ct. 1621, does not

require a different conclusion. The court affirmed the Fourth Circuit's opinion that a pro se indigent prisoner should not be required to prove his legally sufficient allegations in advance of an evidentiary hearing on his habeas corpus petition, at least in the absence of counter-affidavits conclusively proving their falsity. The court considered it significant that the petitioner not only alleged that his plea of guilty had been induced by unkept promises, but he also alleged specifically what the terms of the promise were; when, where and by whom the promise had been made; and the identity of one witness to the promise. The petitioner also alleged that he had told the court that no promises had been made to him in exchange for his plea because he had been instructed to do so by his lawyer in order for the court to accept his plea. Furthermore, there was no verbatim transcript of the plea hearing available, because the local practice was for the court to read questions off a printed form, on which the "correct" answers had also been printed, in order to accept a guilty plea. "In the light of the nature of the record of the proceeding at which the guilty plea was accepted, and of the ambiguous status of the process of plea bargaining at the time the guilty plea was made, we conclude that Allison's petition should not have been summarily dismissed." ___ U.S. ___, ___ 52 L. Ed. 2d 136, 148, 97 S. Ct. 1621, 1630.

■■   This opinion does not alter or add to the rights of an Illinois post-conviction petitioner. If the sworn statements of a petitioner, even without supporting affidavits, warrant a fair inference of a violation of constitutional rights which are not negated by the State or by the record, an evidentiary hearing is required to determine the truth or falsity of the allegations. (*People v. Williams* (1970), 47 Ill. 2d 1, 5, 264 N.E.2d 697, 699.) If the reasons why a guilty plea was involuntarily made are necessarily outside the record, and not denied by the State, an evidentiary hearing is required. *People v. Crislip* (1974), 20 Ill. App. 3d 175, 312 N.E.2d 830.

Nothing stated in *Blackledge v. Allison* or in the Illinois authorities requires an evidentiary hearing where the allegations in the petition, considered with the supporting affidavits and the record of the trial, do not entitle petitioner to relief, even if proven. We find that this is such a case.

The judgment of the circuit court of Cook County dismissing the post-conviction petition without an evidentiary hearing is affirmed.

Judgment affirmed.

GOLDBERG, P. J., and McGLOON, J., concur.